UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **FRANCIS ALAIMO** | : | **CIVIL ACTION NO.:** |
| Plaintiff, | : | |
| vs. | : | |
| **THOMPSONVILLE FIRE DISTRICT #2 AND COLLEEN ANN REIDY,** | : | January 13, 2015 |
| | : | |
| Defendants. | : | |

## COMPLAINT

**I.   NATURE OF THE ACTION**

1.   The Plaintiff, Francis Alaimo ("Alaimo"), has been a firefighter for the past 35 years for the Thompsonville Fire District #2. He has been the Chief of the District since 2007. He is filing employment related claims for disability discrimination under Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. §791 et seq. ("Section 504"), and pendant Connecticut state law claims for Workers Compensation Retaliation, Conn. Gen. Stat. §31-290a, failure to pay wages, Conn. Gen. Stats 31-76b and false light invasion of privacy.  **THE PLAINTIFF REQUESTS A TRIAL BY JURY.**

**II.   JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §791, et seq.

3.   The Court has personal jurisdiction over the Defendants. Defendant Thompsonville Fire District #2 is a municipal government agency within the State of

Connecticut and the events complained of occurred with the State of Connecticut and the events complained of occurred in Connecticut. Defendant Colleen Ann Reidy is a resident of the State of Connecticut and the events complained of occurred in Connecticut.

      4.      The Court has pendant jurisdiction over the Connecticut statutory and common law claims.

      5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events giving rise to this claim occurred in the District of Connecticut and, pursuant to 28 U.S.C. §1391(c), and because Defendants Thompsonville Fire District #2 and Colleen Ann Reidy are subject to personal jurisdiction in the State of Connecticut.

## III.   THE PARTIES

      6.      Plaintiff, Francis Alaimo ("Alaimo"), is a resident of Enfield, Connecticut and is currently employed as a Fire Chief by Thompsonville Fire District #2.

      7.      Defendant, Thompsonville Fire District #2, is a municipal government agency located at 11 Pearl Street, Enfield, Connecticut 06082. The Defendant is a "federal fund recipient," as defined in Section 504, and is an "employer," as defined under Conn. Gen. Stat. §31-71, et seq. and Conn. Gen. Stat. §31-290a.

      8.      Defendant, Colleen Ann Reidy ("Reidy") has been the Chairwoman of the Thompsonville Fire Commission #2 since May 15, 2014. She is a resident of Enfield, Connecticut.

## IV.   STATEMENT OF FACTS

      9.      Alaimo joined the Thompsonville Fire District #2 as a firefighter in 1979.

      10.     In 2007, Alaimo became Chief of the Thompsonville Fire District #2.

11. In 2012, the Thompsonville Dire District approved the construction of a new firehouse for the District. The firehouse was expected to cost approximately $3.5 million.

12. In or around 2012, a group of approximately 200 residents known as The Concerned Taxpayers of the Thompsonville Fire District ("CTTFD") formed to protest the construction of the new firehouse.

13. Alaimo had been a strong proponent of the construction of the new firehouse.

14. On July 5, 2013, the CTFFD filed a complaint and motion for a temporary injunction against the Board of Fire Commissioners of the Thompsonville Fire District #2 related to the proposed construction of a new firehouse and the adoption of the annual budget. On August, 2, 2013, the CTFFD applied for a temporary injunction seeking a temporary restraining order to prevent the Thompsonville Fire District #2 for proceeding with the construction of a new firehouse pending a decision on the lawsuit. On October 3, 2013, Hon. Judge Susan Peck dismissed the CTFFD's lawsuit. <u>Concerned Taxpayer of the Thompsonville Dire District, Stephen Cogtella and Erline Provencher, v. Board of Fire Commission of the Thompsonville Fire District #2,</u> No. HHD-CV-13-6043230-S (J.D. Hartford, Oct. 3, 2013).

15. The CTTFD began a campaign against Frank Alaimo, primarily on Facebook, making false accusations and personal attacks against him.

16. Reidy was one of the most vocal critics of Alaimo. For example, in a Facebook posting on March 22, 2014 criticizing Alaimo, she said, "Retirement can't come soon enough."

17. Alaimo's date of birth is September 6, 1958. He is presently 56 years of age.

18. Three weeks after saying that Alaimo's retirement can't come soon enough, Reidy announced that she was running for a seat on the Thompsonville Fire Commission. She was later joined by CTTFD members William Stone and Patrick Gaskall as candidates for the Thompsonville Fire Commission.

19. On May 15, 2014, Reidy, Stone and Gaskall were elected to the Thompsonville Fire Commission. They joined Robert Gillespie and Rogers Alsbaugh on the five-member Commission. The five Commissioners elected Reidy as the Chairwoman of the Commission.

20. On May 18, 2014, Chief Alaimo sent emails to Reidy providing her with information he thought she would need and expressed his desire to work with her. He stated "going forward it's very important for the Chief and Chairman of the Board of Fire Commissioners to be communicating." He added that "I am looking forward to working with you as well, I hope we can put our differences aside, always keeping the best interest of our Firefighters and the people we serve in mind." He offered to meet with her to discuss the Fire Department structure and the organizational flow chart. He emailed her again on June 2, 2014 suggesting that they meet.

21. In the seven months since taking over as Chairwoman of the Fire Commission, Reidy never met with Alaimo. Rather, along with fellow CTTFD members Stone and Gaskall, she has engaged in a series of actions which culminated in Alaimo being suspended for one month without pay on December 18, 2014 for pretextual reasons. That campaign was carried out while Alaimo was dealing with the severe illness

and October 5, 2014 death of his brother, Dominic Alaimo, who served as the chairman of the Thompsonville Fire District #2 for several years.

22. On January 16, 2015, the Plaintiff will be filing claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et. seq. ("ADEA") and the Connecticut Fair Employment Practices Act, 46a-60(a)(I) ("CFEPA") and disability discrimination, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA") and the CFEPA.

## LEGAL CLAIMS

## COUNT ONE:  SECTION 504

23. Paragraphs 1-22 of the Complaint are re-alleged as Paragraphs 1-22 of Count One.

24. The Plaintiff injured his spine and neck after falling on ice while on the job during a surprise snowstorm in late October 2011.  Several disks in his spine pressed against nerves and his spinal canal.

25. As a result of the injury to his spine and neck, he suffers from severe back and neck pain and headaches.  He has received steroid injections and has to use lidocaine patches.

26. As a result of his injuries, without mitigating measures, he is substantially limited in one or more major life activities, including, but not limited to, lifting, bending and standing.

27. In April, 2014, Alaimo had surgery to fuse his C3 and C4 vertebrae.

28. Alaimo was out of work for six weeks after the surgery.

29. On June 3, 2014, Alaimo sent an email to Reidy to let her know he would be returning to work with restrictions.

30. Alaimo provided Reidy with a note for his surgery from Dr. David Kruger of the Greater Hartford Orthopedic Group. The note stated that the Plaintiff could work but with the limitation of "No Emergency Responses. Cannot Wear Fire Helmet."

31. On September 29, 2014, Dr. Kruger provided the Plaintiff with a note requesting that Chief Alaimo use a "lighter weight OSHA-approved fire helmet." Alaimo sent the note by email to Reidy.

32. Reidy did not respond to Alaimo's requests for an accommodation for his disability.

33. Under Section 504, once an employee with a disability requests an accommodation, the employer must engage in good faith in the interactive process and provide an accommodation unless doing so would give in to an undue hardship.

34. On October 29, 2014, Alaimo sent Reidy an email stating "Please see attached doctor's note, this is relative to my spine fusion that took place this past April, which was a work-related injury. My surgeon suggested that I wear a light-weight OSHA-approved helmet. With your approval, I will order one."

35. On October 29, 2014, Reidy issued a note to the Enfield Town Clerk containing the agenda to the public for the October 31 meeting. The agenda included "Discussion and possible action of Chief Alaimo's new helmet request."

36. No action was taken by the Fire Commissioners related to Alaimo's accommodation requests.

37. On November 6, 2014, Reidy again issued a note to the Enfield Town Clerk containing an agenda issued to the public for a meeting on November 12, 2014. The agenda included "Discussion of possible action of a new helmet for Chief Alaimo."

38. The Plaintiff was not at work on November 12 due to the effects of his work-related heart disease and, therefore, did not attend the Fire Commission meeting.

39. Personnel issues are routinely discussed in private during Executive Session, before Municipal Boards and not discussed in public to protect employees' privacy. For example, the agenda for the November 12, 2014 meeting contains an item to discuss Personnel Issues and Pending Heat and Hypertension claims in Executive Session. Nevertheless, Reidy listed Alaimo's request for an accommodation for his disability so he would be forced to discuss it publicly.

40. The Thompsonville Fire District #2 neither provided Alaimo with a light helmet nor offered an alternative accommodation.

41. As a result of the Defendants' refusal to provide Alaimo with a reasonable accommodation, the Plaintiff was required to wear a heavy helmet to fires and/or respond to calls. As a result, his neck and spine injuries have been exacerbated. He will now need further surgery related to his injury.

42. A lighter fire helmet would have cost approximately $300.

43. The Defendants refused to engage in good faith in the interactive process, as required by Section 504.

44. At all relevant times, the Plaintiff was qualified to perform the essential functions of his position as Fire Chief, with or without a reasonable accommodation.

45. The Thompsonville Fire District #2 violated Section 504 by refusing to accommodate the Plaintiff's disability and by refusing to engage in good faith in the interactive process.

46. The Thompsonville Fire District #2's actions were willful and intentional.

47. As a result of the Thompsonville Fire District #2's violation of Section 504, the Plaintiff suffered severe emotional pain and suffering and an exacerbation of his physical injuries.

**COUNT TWO:  SECTION 504**

48. Paragraphs 1-47 of the Complaint are re-alleged as Paragraphs 1-47 of Count Two.

49. Section 504 adopts the substantive provisions of Title I of the ADA.

50. Title I of the ADA contains a confidentiality provision which provides, in relevant part, that only supervisors and managers may be told of any work restrictions and accommodations.

51. By placing Alaimo's accommodation request on the public agenda of the Fire Commissioners' meeting on October 31, 2014 and November 12, 2014, respectively, the Thompsonville Fire District #2 violated Section 504's confidentiality provision.

52. As a result of the Thompsonville Fire District #2's violation of Section 504's confidentiality provisions, the Plaintiff suffered severe emotional distress.

**COUNT THREE – FALSE LIGHT INVASION OF PRIVACY**

53. Paragraphs 1-52 of this Complaint are re-alleged as Paragraphs 1-52 of Count Three.

54. One of the reasons why the Plaintiff was suspended for one month without pay was because he did not respond to a structure fire which occurred on December 10, 2014 until one hour and 45 minutes after the call originally came in.

55. Alaimo did not hear the call because at the time it came in shortly after 6 AM. He was in the bathroom at his home self-administering medication related to his treatment for Colitis and Crohn's Disease.

56. Colitis is an inflammation of the colon and is often used to describe an inflammation of the large intestine. Crohn's Disease is an inflammatory bowel disease. It results in a chronic inflammatory disorder.

57. During his disciplinary hearing on December 16, 2014, the Plaintiff explained that he was not able to immediately respond to the fire because he was in the bathroom and was administering treatment for his Colitis. He described the process he goes through to administer the treatment. He also said he had been diagnosed with Colitis Disease 17 years before. (On the morning of the December 10, 2014 structure fire, he forgot to take his radio in with him to the bathroom.)

58. In an article entitled "Rally Planned to Support Suspended Thompsonville Fire Chief" that appeared in the December 27-28, 2014 edition of the *Manchester Journal Inquirer*, Reidy said that the Thompsonville Fire Commission "didn't know" about Alaimo's medical issues before Alaimo brought them up during the December 16, 2014 disciplinary hearing.

59. In an article entitled "Panel Suspends Thompsonville Fire Chief for 4 Weeks Without Pay For Not Following Its Directives" that appeared in the December 17, 2014 edition of the *Manchester Journal Inquirer*, Reidy said that the Fire Commission "didn't

know" about Alaimo's medical issues before Alaimo brought them up during the December 16, 2014 hearing.

60. In an interview with Fox 61 television news station in Hartford, CT about Alaimo's suspension that aired on or about December 17, 2014, Reidy stated that the Fire Commission was not aware that he had Crohn's Disease and Colitis.

61. Reidy knew that Alaimo had Colitis.

62. Shortly before returning to work after his spinal surgery, Alaimo sent Reidy an email on June 2, 12014, which stated:

> "Hi Colleen, just a reminder I will be seeing the surgeon tomorrow. I'm thinking he will allow me to [work] with some restrictions.
>
> I have another medical issue; for about the last 17 years, I've been suffering from colitis. It has been basically under control/dormant. I did have a flare-up last year and they came very close to a surgery. Up to now, I have never had surgery for this condition. Unfortunately, recently I have had a severe flare-up. I will be seeing the surgeon this coming Friday. My G.I. doctor is hoping we can get this under control with an additional medication. This is the second flare-up in the last year.
>
> I'm not sure if you're familiar with this disease. It can be very debilitating and life altering."

63. Reidy responded the following morning to Alaimo's email, stating by email, "I hope all goes well for you today, keep me updated."

64. Reidy's aforesaid false statements that the Commission did not learn about his medical issues related to his Colitis until he disclosed it during the December 16, 2014 hearing publicized a matter that placed Alaimo before the public in a false light.

65. Reidy's comments implied that Alaimo had concealed his Colitis from the Fire Commission, even though he disclosed it to Reidy before his first day back at work after she took over as the Chairwoman for the Thompsonville Fire Commission.

66. The false light in which Alaimo was placed as a result of Reidy's statements would be highly offensive to a reasonable person.

67. Reidy knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Alaimo would be placed.

68. Reidy's false statements that the Fire Commission did not know about Alaimo's medical issues related to his Colitis were made with actual malice.

69. Reidy's aforesaid statements were made in her role as the Chairwoman for the Thompsonville Fire District #2.

70. Reidy's aforesaid statements were authorized and approved by the Thompsonville Fire District #2.

71. Alaimo suffered severe emotional trauma as a result of Reidy's aforesaid statements.

72. Each Defendant is jointly and severally liable for false light invasion of privacy.

**COUNT FOUR – WORKER'S COMPENSATION RETALIATION**

73. Paragraphs 1-72 of this Complaint are re-alleged as Paragraphs 1-72 of Count Four.

74. On August 25, 2003, Alaimo and the Thompsonville Fire District #2 entered into a Voluntary Agreement and Stipulation that Alaimo had job-related heart disease which was a partial permanent disability rate of 14% and was covered under the Connecticut Heart and Hypertension Act, Conn. Gen. Stat. §7-433c.

75. On October 23, 2012, Alaimo and Thompsonville Fire District #2 entered into a Voluntary Agreement and Stipulation which provided that (1) Alaimo claimed that his illnesses and injuries had increased his permanent partial disability rating from 14% to 24%, and (2) Alaimo's permanent partial disability rating would be raised to 24%.

76. Conn. Gen. Stat. §31-290a prohibits employers from discriminating against any employee because the employee has filed a claim for worker's compensation benefits or otherwise exercised his rights afforded to him under the Worker's Compensation Act.

77. As a result of medical problems he was having related to his heart disease, Alaimo was required to be out of work from November 6-21, 2014.

78. In early November 2014, Reidy sent Alaimo an email stating that "any leave you take for medical appointments, including your H&H appointments, should be charged to sick leave (or other paid leave) to the extent you have available time."

79. On November 13, 2014, Alaimo sent an email to Reidy, and copied all of the Fire Commissioners, stating that he would instruct his Administrative Assistant to deduct the time he was out of work related to his Heart and Hypertension claim from his sick leave bank. He said, "I respectfully disagree with the district's sudden change in its policy/procedure relative to employees suffering from heart and hypertension." He further stated that he reserved his right to have a hearing before the Connecticut Worker's Compensation Commission to resolve this issue.

80. On November 16, 2014, Reidy sent Alaimo an email stating that "The days you have been out this current pay period need to be taken from either your sick days, vacation or personal time."

81. Under the Worker's Compensation Act, employers may not require their employees to use sick time for days missed related to an injury that has been recognized and accepted to be a work-related injury for which the individual receives worker's compensation benefits.

82. Prior to Alaimo's medical leave in November, 2014, the Thompsonville Fire District #2 had never required its Firefighters who qualified under the Heart and Hypertension statute, Conn. Gen. Stat. §7-433c, to use sick, personal and/or vacation days for either doctors or medical appointments.

83. For at least the past 15 years, the Thompsonville Fire District #2 maintained a practice whereby Fire Chiefs, Assistant Chiefs and Deputy Chiefs are paid 100% of their accrued but unused sick time and/or vacation time when they leave the Department.

84. As of November 12, 2014, Alaimo had 200 accrued but unused sick days.

85. By forcing Alaimo to use his accrued and unused sick days for his Heart and Hypertension-related absences and/or medical appointments, he will lose approximately $400.00 per day.

86. The Thompsonville Fire District #2 violated Conn. Gen. Stat. §31-290a by forcing Alaimo to use his accrued but unused sick, personal and/or vacation days for absences and/or medical appointments related to his Heart and Hypertension disease to retaliate against him for having filed for worker's compensation benefits and exercising his rights under the Worker's Compensation Act.

87. The Thompsonville Fire District #2 violated Conn. Gen. Stat. §31-290a by suspending Alaimo for one month without pay on December 16, 2014 for pretextual reasons to retaliate against him for having filed for worker's compensation benefits and exercising his rights under the Worker's Compensation Act, including, but not limited to, objecting on November 13, 2014 to the Defendant's decision to force him to use his accrued but unused sick time and saying that he reserved his right to challenge their decision to the Connecticut Worker's Compensation Commission.

**COUNT FIVE:  UNPAID WAGES**

88. Paragraphs 1-87 of the Complaint are re-alleged as Paragraphs 1-87 of Count Five.

89.     The Plaintiff is paid at a rate of $47.62 per hour to work 42 hours per week.  However, like many Fire Chiefs, he often works more than 42 hours per week.

90.     In early August, 2014, during the Executive Session of a Fire Commissioners' meeting, new Fire Commissioner and CTTFD member Patrick Gaskall became angry at Alaimo because he was at a structure fire which occurred while Alaimo was "off-duty."  Gaskall said that Alaimo had better start going to fires when he was off duty, and that Alaimo should expect Gaskall to be there "checking up on him."  Gaskall requested a record of the Plaintiff's attendance at fires over the past five years but was told that those attendance records had not been kept.  Alaimo requested that Gaskall go back to the public Fire Commission meeting and go on the record and repeat his comments about how Alaimo should go to fires even if he is not on duty and Gaskall would be there to check up on him; Gaskall would not do so.

91.     Alaimo often responded to fire calls when off-duty but, like other firefighters, did not always do so when he was traveling or otherwise unavailable.

92.     Shortly after his encounter with Gaskall, Alaimo contacted the Connecticut Department of Labor.  The individual with whom he spoke told Alaimo that, under Conn. Gen. Stat. §31-76b, Alaimo was entitled to be paid at his hourly rate for any time worked responding to fires, attending Fire Commission meetings or on any other assignments that were performed in addition to the 42 hours per week of work.

93.     During the time period between February 2, 2013 and August 22, 2014, Alaimo worked but was not paid for approximately 169 hours.  These hours primarily

related to his time attending Fire Commission meetings and responding while off-duty to fire calls.

94. Based on his hourly rate, Alaimo is entitled to $8,057.92, plus interest, in lost wages.

95. The Thompsonville Fire District #2 knew and/or should have known that Alaimo was not paid for the time he spent responding to fires and/or attending fire Commissioner meetings.

## V. PRAYER FOR RELIEF

Wherefore, the Plaintiff requests this Court take jurisdiction over this case and grant judgment in his favor and against Defendants. Plaintiff requests that:

1. The Thompsonville Fire District #2 be ordered to pay Alaimo one month's of lost wages for his one-month supervision and for his unpaid wages from February 2, 2013-August 22, 2014, plus interest.

2. Defendants Thompsonville Fire District #2 and Colleen Ann Reidy be ordered to compensate Alaimo for his emotional distress.

3. The Defendant Thompsonville fire District #2 be ordered to provide Alaimo with a reasonable accommodation of a lighter fire helmet.

4. The Defendant Thompsonville Fire District #2 be ordered to compensate Alaimo for the exacerbation of his neck and spine injury resulting from its refusal to provide him with a reasonable accommodation.

5. The Defendant Thompsonville Fire District #2 be ordered to pay Alaimo punitive damages.

6. The Plaintiff be awarded reasonable attorney fees and costs.

7. The Plaintiff be awarded such other relief as the Court deems appropriate.

**Dated at Stratford, Connecticut, this 13th day of January, 2015.**

                                      **RESPECTFULLY SUBMITTED,**

                                      **THE PLAINTIFF**

                                      By:  /s/ Gary Phelan_____
                                      Gary Phelan (ct03670)
                                      Mitchell & Sheahan, P.C.
                                      80 Ferry Blvd., Suite 216
                                      Stratford, CT 06615
                                      Tel.: (203) 873-0240
                                      gphelan@mitchellandsheahan.com